IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**AIR EVAC EMS, INC.,**
               **Plaintiff,**

-vs-

**STATE OF TEXAS, ex rel. Department of
Insurance Division of Workers' Compensation;
DAVID MATTAX, Texas Commissioner of
Insurance, in his official capacity; and RYAN
BRANNAN, Texas Commissioner of Workers'
Compensation, in his official capacity,**
               **Defendants.**

**Case No.  A-16-CA-060-SS**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically the Intervenor Defendants' Motion to Dismiss for Lack of Jurisdiction, and in the Alternative, Motion to Stay [#33], the State Defendants' Motion to Dismiss [#34], Plaintiff Air Evac EMS, Inc.'s Omnibus Response [#44] thereto, the Intervenor Defendants' Reply [#44] in support, the State Defendants' Reply [#46] in support, and the Letter Briefs [##40, 42, 43] filed by the parties. Having considered the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This declaratory judgment action lies at the intersection of three industries: air ambulance services, aviation, and workers' compensation. Plaintiff Air Evac EMS, Inc., a nationwide provider of air ambulance services (colloquially known as "life flight"), brings suit challenging several

provisions of the Texas Workers' Compensation Act (TWCA), TEX. LABOR CODE §§ 401.001–401.026, which limit the amount Air Evac can charge for its services. Air Evac contends the Texas statutes and related regulations at issue are preempted by the federal Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b)(1).

The defendants in this case are the Texas Department of Insurance Division of Workers' Compensation (the Division), the agency that administers the Texas workers' compensation system and acts as the first-level adjudicator of medical fee disputes; David Mattax, the Texas Commissioner of Insurance; Ryan Brannan, the Texas Commissioner of Workers' Compensation; and a group of Texas workers' compensation insurers (Texas Mutual Insurance Company, Liberty Mutual Insurance Company, Zenith Insurance Company, Hartford Underwriters Insurance Company, Twin City Fire Insurance Company, Transportation Insurance Company, Valley Forge Insurance Company, and Truck Insurance Exchange).

At the outset, the Court notes Air Evac does not oppose dismissal of the Division. *See* Resp. [#44] at 6 n.3. As such, the Division is hereby DISMISSED from this lawsuit. Moving to the live disputes, Mattax and Brannan (collectively, the State Defendants) and the insurers (collectively, the Intervenor Defendants) have filed motions to dismiss Air Evac's complaint. As set forth below, the Court finds the motions to dismiss should be GRANTED.

A.     **Facts**

i.     **Air Evac**

Air Evac maintains a fleet of air ambulances serving Texas residents from more than 20 air bases throughout Texas. In order to provide air ambulance services, Air Evac must hold a variety of certifications and licenses from the U.S. Department of Transportation (USDOT), the Federal

Aviation Administration (FAA), and the State of Texas.  USDOT recognizes Air Evac as an "'air carrier' authorized to provide interstate air transportation[,]" and the FAA has issued Air Evac a certificate permitting it to operate nationwide.  Compl. [#1] ¶ 14; *id.* [#1-1] Ex. A.  USDOT has also authorized Air Evac to operate as an "air taxi," meaning it may "transport persons or property and does not engage in regular round-trip flights."  *Id.* [#1] ¶ 15.  Finally, Air Evac holds a license to provide air ambulance services from the State of Texas, issued pursuant to Chapter 773 of the Texas Health and Safety Code.  *See id.* [#1-4] Ex. D; TEX. HEALTH & SAFETY CODE § 773.045.

Since air ambulances are generally required only in life-threatening emergencies, Air Evac is typically "required by state and federal law to transport any patient requiring its services without regard to the patient's insurance coverage or ability to pay[.]"  Compl. [#1] ¶ 11.  As such, Air Evac alleges it is sometimes unable to recover the entire amount of its billed charges for the services it provides—when, for example, the person being transported is uninsured, covered by Medicaid or Medicare, or the insurer billed will cover only a portion of the bill.  *See id.*  If a workers' compensation insurer pays less than Air Evac's billed charges, Air Evac may file a medical fee dispute with the Division, which applies the TWCA and its regulations to determine whether Air Evac is owed further payment and if so, how much.  *See* Resp. [#44] at 2.  The Division's decisions may be appealed to the State Office of Administrative Hearings (SOAH), and SOAH's decisions are appealable to Travis County District Court.  *See id.*; TEX. LABOR CODE § 413.031(k-1).

### ii.    The Texas Workers' Compensation Act

In 1989, the Texas Legislature enacted the TWCA "in response to rising medical costs and increasing insurance premiums."  *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 646–47 (Tex. 2004).  The TWCA controls medical costs in the workers' compensation

setting by requiring the Texas Workers' Compensation Commission "to establish fee guidelines for reimbursements to health care providers who treat injured workers." *Tex. Workers' Comp. Comm'n*, 136 S.W.3d at 647; *see* TEX. LABOR CODE § 413.011(a) (requiring the Commissioner to adopt reimbursement guidelines). To that end, the Commission promulgates guidelines that set the maximum allowable reimbursement a health care provider may be paid by a workers' compensation insurer for services rendered. *See Tex. Workers' Comp. Comm'n*, 136 S.W.3d at 647; 28 TEX. ADMIN. CODE § 134.201.

In setting the maximum allowable reimbursement for a medical service, the Commissioner looks to the rates set by the federal Centers for Medicare and Medicaid Services, among other statutory factors. *See* TEX. LABOR CODE § 413.001(a); 28 TEX. ADMIN CODE § 134.1(a); *see* Compl. [#1-6] Ex. F (SOAH Opinion) at 13 (enumerating factors). In a proceeding conducted by the SOAH, a Texas administrative law judge recently found the maximum allowable reimbursement rate for air ambulance services is 149% of the Medicare reimbursement amount, a rate "well below Air Evac's billed charges, and the usual and customary fare it charges for its services." Compl. ¶¶ [#1] 27–28; *see generally* SOAH Opinion.

In addition to its regulations affecting the amount health care providers may be reimbursed for their services, the TWCA also prohibits "balance-billing," the practice of directly billing the injured worker for the difference between the provider's usual billed charges and the amount paid by the workers' compensation insurer. *See* TEX. LABOR CODE § 413.042 ("A health care provider may not pursue a private claim against a workers' compensation claimant for all or part of the cost of a health care service[.]").[1]

---

[1] Absent certain special circumstances. *See* TEX. LABOR CODE § 413.042(a)(1)–(2).

Air Evac alleges it provided air ambulance services to "several dozen" workers' compensation patients during 2015, but "because of the TWCA's reimbursement scheme, . . . has been paid only a small fraction of its billed charges." Compl. [#1] ¶ 31. As previously noted, Air Evac believes the relevant statutes and regulations comprising the reimbursement scheme are preempted by the federal ADA, which prohibits any state from enacting or enforcing any law "related to a price, route, or service of an air carrier[.]" 49 U.S.C. § 41713(b)(1).

**B.      Procedural History**

Air Evac initiated this action by filing suit against the State Defendants on January 28, 2016. *See* Compl. [#1]. In its prayer for relief, Air Evac asks the Court to (1) render a declaratory judgment that the ADA preempts the TWCA's reimbursement limitations and enjoin their enforcement, or (2) in the alternative, render a declaratory judgment that the ADA preempts the TWCA's balance-billing prohibition and enjoin its enforcement.

On March 11, 2016, the Intervenor Defendants filed a joint motion to intervene, which the Court granted on March 24, 2016. *See* Order of Mar. 24, 2016 [#20].

Following the parties' submission of their Proposed Rule 26(f) Discovery Plan, in which the parties explained their inability to agree upon the necessity for discovery in this case, the Court set a status conference to be held on May 5, 2016. *See* Order of April 19, 2016 [#27]. Six days prior to the scheduled conference, Air Evac filed a motion for summary judgment, prompting requests for extension of time to respond. *See* Mot. Summ. J. [#29]; Mot. Extension [#31]; Intervenor Defs.' Notice Support [#35]. On May 4, 2016, the night before the status conference, the Intervenor Defendants and State Defendants filed their respective motions to dismiss, which are the subject of this opinion.

Following the status conference, the Court issued an order holding Air Evac's motion for summary judgment in abeyance pending resolution of the newly-filed motions to dismiss. *See* Order of May 5, 2016 [#39].  On May 18, 2016, Air Evac filed an omnibus response to the defendants' motions to dismiss, and on May 25, 2016, the defendants filed their respective replies.  The motions to dismiss are ripe for decision.

## Analysis

### I.      Legal Standards

### A.      Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction, and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Federal Rule of Civil Procedure 12(b)(1) allows a party to assert a lack of subject matter jurisdiction as a defense to suit.  The burden of establishing subject matter jurisdiction by a preponderance of the evidence rests with the party seeking to invoke it. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008).

In evaluating a challenge to subject matter jurisdiction, the Court is free to weigh the evidence and resolve factual disputes so that it may be satisfied jurisdiction is proper. *See Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).  In conducting its inquiry the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *Id.*  The Court must take the allegations in the complaint as true and draw all inferences in the plaintiff's favor. *Saraw P'ship v. United States*, 67 F.3d 567, 569 (5th Cir. 1995); *Garcia v. United States*, 776 F.2d 116, 117 (5th Cir. 1985). Dismissal is warranted if the plaintiff's allegations, together with any

undisputed facts, do not establish the Court has subject matter jurisdiction. *See Saraw*, 67 F.3d at 569; *Hobbs v. Hawkins*, 968 F.2d 471, 475 (5th Cir. 1992).

**B.      Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the

complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II. Application

The Intervenor Defendants argue Air Evac's complaint must be dismissed because the Court lacks subject-matter jurisdiction. According to the Intervenor Defendants, there is no subject-matter jurisdiction because there is no private right of action under the ADA or the Supremacy Clause and Air Evac cannot satisfy the requirements of *Ex parte Young*, 209 U.S. 123 (1908). Alternatively, the Intervenor Defendants contend this Court should abstain from hearing the case under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). The State Defendants agree dismissal is proper because the *Ex parte Young* exception to Eleventh Amendment immunity does not apply, and further argue Air Evac's complaint fails to state a claim for injunctive relief.[2]

Air Evac responds that the Intervenor Defendants have improperly conflated the jurisdictional question with the question whether Air Evac has a private right of action to seek relief. Air Evac argues this Court has federal-question jurisdiction under 28 U.S.C. § 1331, that it may proceed in equity under *Ex parte Young*, and that there is no basis for *Colorado River* abstention because there is no parallel state lawsuit pending and it would not be proper to abstain in deference to the administrative medical fee disputes pending before the Division and SOAH.

---

[2] The State Defendants also briefly argue Air Evac lacks standing to bring this suit. The Court rejects this argument. Standing requires "three elements: injury-in-fact, causal connection, and redressability." *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 636 (5th Cir. 2012). Air Evac has suffered economic injury given its alleged inability to recover the total amount of its billed charges under the TWCA reimbursement scheme; the causal connection between the scheme and Air Evac's injury is clear; and if the challenged provisions are indeed preempted, the State Defendants will no longer be able to enforce them. Air Evac has standing to sue.

As set forth below, the Court finds that although it has jurisdiction over the subject matter, Air Evac does not satisfy the requirements of *Ex parte Young* because it has failed to show an imminent or threatened enforcement proceeding. As such, Air Evac's complaint must be dismissed.

## A.    Subject-Matter Jurisdiction & Cause of Action

First, the Court agrees with Air Evac that the Intervenor Defendants have improperly conflated the question whether this Court has subject-matter jurisdiction with the question whether Air Evac has a private right of action. To set the stage: "*jurisdiction* is a question of whether a federal court has the power, under the Constitution or laws of the United States, to hear a case . . . ; *cause of action* is a question of whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court[.]" *Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979). "[I]t is firmly established" that "the absence of a valid cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998)); *Steel Co.*, 523 U.S. 89. Inversely, the presence of subject-matter jurisdiction tells us nothing about whether the plaintiff has a private right of action to bring suit. Thus, the presence or absence of either does not bear upon the other.

### i.    The Court has subject-matter jurisdiction under 28 U.S.C. § 1331

As for subject-matter jurisdiction: The Supreme Court has expressly stated that federal courts have jurisdiction under 28 U.S.C. § 1331, the statutory grant of federal-question jurisdiction, to hear cases in which plaintiffs seek to enjoin allegedly preempted state regulation. *See Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n.14 (1983) ("A plaintiff who seeks injunctive relief from state regulation,

on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."). The Fifth Circuit has recognized and reaffirmed this "well-established" principle. *See Planned Parenthood of Hous. & Southeast Tex. v. Sanchez*, 403 F.3d 324, 331 (5th Cir. 2005). As such, the jurisdictional question in this case is easy to resolve. Because Air Evac "seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute," this Court has subject-matter jurisdiction under § 1331. The defendants' arguments to the contrary are rejected.

ii.     **Because there is no private right of action under the ADA, the Supremacy Clause, or the Declaratory Judgment Act, Air Evac must look to equity to proceed**

Whether Air Evac has a valid private right of action—that is to say, whether some federal statutory, constitutional, or other authority permits Air Evac to invoke the power of the federal courts—is a more complicated issue. The ADA does not create a private right of action. *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 925 (5th Cir. 1997). Further, in the context of declaratory judgment actions seeking to enjoin state law on federal preemption grounds, the Supreme Court has long ignored the question whether a private right of action exists where, as in this case, the allegedly preemptive federal statute does not create one. *See, e.g., Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 642–43 (2002) (rejecting state defendant's argument dismissal was proper because plaintiff lacked a cause of action by pointing to § 1331's "general grant of jurisdiction"); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) (invalidating state statute under the Supremacy Clause without considering whether private right of action existed under preemptive

federal statute)[3]; *Planned Parenthood of Kan. & Mid-Mo. v. Moser*, 747 F.3d 814, 822–36 & nn. 4–7 (10th Cir. 2014) (discussing an inability to "discern the source of the cause of action" in analogous Supreme Court cases "because the Court does not address the matter").[4]

Recently, the two most popular potential candidates for the source of such a right—the Supremacy Clause and the Declaratory Judgment Act—were foreclosed by the Supreme Court and the Fifth Circuit. Just last year, the Supreme Court ruled the Supremacy Clause "does not create a cause of action[,]" explicitly rejecting the argument its "preemption jurisprudence—specifically, the fact that we have regularly considered whether to enjoin the enforcement of state laws that are alleged to violate federal law—demonstrates that the Supremacy Clause creates a cause of action for its violation." *Armstrong v. Exceptional Child Center*, 135 S. Ct. 1378, 1383 (2015). Similarly, the Fifth Circuit expressly ruled last year that "the Declaratory Judgment Act alone does not create a federal cause of action." *Harris Cty. Tex. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015).

---

[3] *See also* David Sloss, *Constitutional Remedies for Statutory Violations*, 89 IOWA L. REV. 355, 394–98 & nn. 247–48 (2004) (discussing lack of private right of action in *Crosby* in detail and citing eleven Supreme Court cases similarly ignoring the question).

[4] This state of affairs was also reflected in *Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324 (5th Cir. 2005). In *Sanchez*, the appellee-plaintiffs sued the Texas Commissioner of Health, arguing federal law preempted the Texas statute at issue. 403 F.3d at 329. After finding jurisdiction existed pursuant to *Shaw*, the Fifth Circuit expressly held that an implied cause of action also existed, explaining while several of its precedents "d[id] not directly address the issue of whether a valid cause of action existed, we assumed that one did. Today we hold that one does." *Id.* at 333. In a lengthy footnote, the panel suggested (but, carefully, did not decide) that the cause of action might flow from the Supremacy Clause or the Declaratory Judgment Act. *See id.* at 334 n.47 ("While the Supreme Court has not explained the source of this right . . ., one school of thought holds that the Supremacy Clause itself creates an implied cause of action. . . . Another possible source is the Declaratory Judgment Act, upon which courts have occasionally explicitly relied."). Ultimately leaving that question unanswered, the *Sanchez* panel proceeded to the merits. *See id.* at 334–35.

The Court highlights *Sanchez* to note that in clearly differentiating jurisdiction from the presence of a cause of action and holding both existed, the Fifth Circuit's decision significantly departed from the undersigned's reasoning in the district-level opinion, as this Court's analysis conflated the existence of jurisdiction and the presence of a cause of action. *See Planned Parenthood of Cent. Tex. v. Sanchez*, 208 F. Supp. 2d 590, 599–600 (W.D. Tex. 2003) (Sparks, J.).

That neither the Supremacy Clause nor the Declaratory Judgment Act provides a cause of action, however, does not necessarily foreclose Air Evac from proceeding, as the Supreme Court has "long held that federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law." *Armstrong*, 135 S. Ct. at 1384. Specifically, "[i]n a proper case, relief may be given in a court of equity to prevent an injurious act by a public officer." *Id.* Given this holding, the question becomes whether Air Evac may proceed under the doctrine of *Ex parte Young*, which under certain circumstances authorizes equitable relief against state officers despite their typical Eleventh Amendment immunity from suit. As set forth below, the Eleventh Amendment issue is dispositive here: Air Evac may not proceed under *Ex parte Young*.

**B.    *Ex parte Young***

The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.[5]   Under the Amendment, states enjoy sovereign immunity from suit in federal court. *Idaho v. Couer d'Alene Tribe*, 521 U.S. 261, 267 (1997). The doctrine of *Ex parte Young*, however, creates an exception to Eleventh Amendment immunity "for certain suits seeking declaratory and injunctive relief against state officers in their individual capacities." *Id.* at 269.

The Supreme Court has recognized that application of the exception may be appropriate in three general circumstances: (1) where state officials are clearly acting outside their statutory authority, *see id.* at 270; (2) where "no state forum exists to vindicate federal interests, thereby

---

[5] "Although by its terms the Amendment applies only to suits against a State by citizens of another State, the Amendment's applicability has been extended to suits by citizens against their own States." *Cox v. City of Dallas*, 256 F.3d 281, (5th Cir. 2001) (quoting *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001)) (internal alterations omitted).

placing upon Article III courts the special obligation to ensure the supremacy of federal statutory and

constitutional law," *id.*; and (3) where a plaintiff seeks prospective relief and alleges an ongoing

violation of federal law, implicating "the interest in having federal rights vindicated in federal

courts," *id.* at 274–78.  While there is "a presumption in favor" of permitting suits that present this

third circumstance to proceed, whether or not that presumption "is controlling will depend upon the

particular context." *Id.* at 277.

The first circumstance is inapplicable to this case, as no party argues Mattax and Brannan

have taken any *ultra vires* actions.  The second, too, is inapplicable, because Air Evac has a state

forum through which it may seek vindication of its federal interests.  As noted, under the TWCA,

a medical fee dispute begins in the Division and may be appealed to the SOAH.  *See* Resp. [#44] at

2; *In re Mid-Century Ins. Co. of Tex.*, 426 S.W.3d 169, 174 (Tex. App.—Houston [1st Dist.] 2012,

no pet.) (describing the review process).  A final decision of the SOAH exhausts a party's

administrative remedies, and the party may thereafter appeal to a Travis County district court.  *Mid-*

*Century*, 426 S.W.3d at 174 (citing TEX. LABOR CODE § 413.031(k-1)); 28 TEX. ADMIN. CODE

§ 133.307(p)(4).  Air Evac thus has access to the state courts following exhaustion of its

administrative remedies,[6] and "[f]or purposes of the Supremacy Clause, it is simply irrelevant

whether the claim is brought in state or federal court." *Couer d'Alene*, 521 U.S. at 275.

---

[6] Air Evac argues the availability of appeal to the Texas courts is inadequate because the Division and the SOAH "lack jurisdiction . . . to resolve constitutional questions[.]" Resp. [#44] at 12.  The Court expresses no opinion on the question whether the preemption issue raised by this case is a "constitutional question."  Even if it were, however, and therefore that the Division and the SOAH lacked the authority to address it, Air Evac would still be permitted to raise preemption before the trial court. *See Cent. Power & Light Co. v. Sharp*, 960 S.W.2d 617, 618 (Tex. 1997) (holding the plaintiff's constitutional challenge "was within the trial court's jurisdiction even though [the plaintiff] did not raise [it] . . . before the agency").

The third circumstance presumably applies, as Air Evac seeks prospective injunctive relief and alleges an ongoing violation of federal law. Contending *Ex parte Young* is nevertheless inapplicable, however, the defendants raise two main arguments: first, that considerations unique to the workers' compensation context make application of the *Ex parte Young* exception inappropriate; and second, that the exception cannot apply because the state has neither initiated nor threatened enforcement proceedings against Air Evac.

Regarding the unique considerations raised by workers' compensation suits, the Intervenor Defendants point to 28 U.S.C. § 1445(c), which prohibits the removal to any federal District Court of "a civil action in any State court arising under the workmen's compensation laws of such State." The Intervenor Defendants point out § 1445(c) "reflects a broad federal policy that favors leaving matters arising under state workers' compensation laws in the state courts[.]" Reply [#45] at 9. As a statement of policy, the Intervenor Defendants' assertion is correct. *See Jones v. Roadway Express, Inc.*, 931 F.2d 1086, 1091 (5th Cir. 1991); *Kay v. Home Indem. Co.*, 337 F.2d 898, 902 (5th Cir. 1964) (opining workers' compensation cases are "of such a technical statutory form that they have little real business in a federal court"). Before applying that policy, however, this Court must "determine preliminarily whether [this] action . . . is a civil action 'arising under' the workers' compensation laws of Texas." *Jones*, 931 F.3d at 1091. While the underlying medical fee disputes certainly arise under the workers' compensation laws of Texas, *this* action—a suit for declaratory and injunctive relief based upon an allegation of federal preemption—does not.

This is so because, unlike in the underlying medical fee disputes, the rules of decision in this case will not be drawn from the text of the TWCA. *See, e.g.*, SOAH Opinion at 20 ("Subsection (d) of Rule 134.203 states that '[t]he MAR for [HCPCS] Level II codes A, E, J, K, and L shall be

determined as follows . . . .' Because air ambulance services are billed under HCPCS Level II code A, subsection (d) appears to apply."); *see generally id.* at 13–29 (making similarly detailed inquiries). Rather, this Court will be called upon to compare the ADA's preemption provision with the challenged portions of the TWCA to determine whether those portions are preempted.[7] This question is federal in nature. The policy favoring leaving workers' compensation cases in the state courts thus has little applicability here, and does not provide a basis for disallowing Air Evac from proceeding under *Ex parte Young*.

Finally, the defendants argue Air Evac has not satisfied the requirements of *Ex parte Young* because Mattax and Brannan have neither initiated nor threatened to initiate any enforcement proceedings against Air Evac. As the Fifth Circuit has explained, the enforcement-proceeding requirement is grounded in *Ex parte Young* itself: "*Young* solidified the doctrine that state officers could be sued in federal court despite the Eleventh Amendment, while simultaneously emphasizing the requirements that the officers . . . be specially charged with the duty to enforce the statute *and be threatening to exercise that duty.*" *Okpalobi v. Foster*, 244 F.3d 405, 414–15 (5th Cir. 2001) (citing *Ex parte Young*, 209 U.S. at 157, 158). The Court agrees that because Air Evac has failed to show threatened enforcement proceedings, it may not invoke the *Young* exception.

It must be noted, however, that this case presents an odd scenario vis-a-vis the enforcement-proceedings inquiry. Given the structure of the workers' compensation reimbursement scheme, it seems to the Court that there is no way Air Evac could "violate" the TWCA's reimbursement

---

[7] And, the Court suspects, to analyze the applicability of the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), which provides: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." *See* Compl. [#1] ¶ 33 (arguing the Act does not "reverse-preempt" the ADA).

limitations (as opposed to its balance-billing prohibition, which will be discussed in a moment) such that the state would be moved to "enforce" them against Air Evac. Air Evac is simply not in the position to do so. To be more specific: as the Court understands the reimbursement scheme, the Intervenor Defendants and other workers' compensation insurers peg their reimbursement amounts for particular medical services to the maximum allowable reimbursements set by the Texas Workers' Compensation Commission. As in a typical insurer-provider relationship, Air Evac and other health care service providers submit their billed charges to the workers' compensation insurers, who then reimburse the providers in accord with the maximum allowable reimbursement set by the Commission. *See* TEX. LABOR CODE § 408.027 (setting forth the required billing and payment process); *id.* at § 408.027(f) ("[A]ny payment made by an insurance carrier under this section shall be in accordance with the fee guidelines authorized under this subtitle[.]").

It is these "maximum allowable reimbursement" limitations, as set, interpreted, and applied by the State Defendants, to which Air Evac objects—but it is the workers' compensation insurers who are technically constrained by them; the insurers are disallowed from paying Air Evac any more for its services than the state permits. This is not a case where, as in *Ex parte Young* itself, the state has passed some regulation prohibiting the aggrieved party from charging more; here, the state has prohibited others from paying more to the aggrieved party. Thus, there is no realistic scenario in which the reimbursement limitations would be enforced against Air Evac, as Air Evac is not the actor constrained by them.

In light of the above, the Court finds that in conducting the *Young* analysis in this case, it is appropriate to look for state enforcement of the balance-billing prohibition, not the reimbursement limitations. Air Evac's goal is to be paid more money for its services than it is being paid, and

having no ability under the statutory scheme to extract more money from the insurers, it would naturally wish to turn to the patients to seek payment. Doing so, however, would violate the balance-billing prohibition, *see* TEX. LABOR CODE § 413.042(b), and subject Air Evac to possible penalties: the TWCA permits a fine of up to "$25,000 per day per occurrence" with "[e]ach day of noncompliance constitut[ing] a separate violation." *Id.* § 415.021(a). As such, a violation of the TWCA potentially prompting enforcement by the state would occur in this scenario, not before.

Even with the question so framed, however, Air Evac's claims fail under *Young*, as Air Evac has failed to show an enforcement proceeding concerning the balance-billing prohibition is imminent, threatened, or even intended. Air Evac does not contest the fact no proceeding has been threatened; rather, it argues it need not make that showing because it would "expose itself to potentially huge liability if it were forced to violate the TWCA and then raise its preemption defense in the enforcement proceedings." Resp. [#44] at 11. This argument confuses the requirements for proceeding against state officers under *Ex parte Young*, a question that raises Eleventh Amendment concerns, with the basic requirements for seeking injunctive relief from a court of equity. The *Ex parte Young* exception to sovereign immunity "does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Okpalobi*, 244 F.3d at 415 (quoting *Children's Healthcare v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996)). The requirement "of "some actual or threatened enforcement action" in this context "has been repeatedly applied by the federal courts." *Id.* (citations omitted).[8] Air Evac may not avoid it here.

---

[8] Air Evac cites *Morales v. Trans World Airlines*, 504 U.S. 374, 381 (1992), in support of its claim it need not show an imminent or threatened enforcement proceeding to proceed in equity. The Court finds this claim unpersuasive. In *Morales*, the Court cited to *Ex parte Young* solely in determining whether there was sufficiently imminent and irreparable injury to support an award of injunctive relief. The Court did not discuss the Eleventh Amendment or the *Ex parte Young* exception thereto.

The Court therefore finds that because Air Evac has failed to show an imminent or threatened enforcement proceeding, it may not avail itself of the *Ex parte Young* exception to Eleventh Amendment immunity in order to proceed against Mattax and Brannan in equity. As such, Air Evac's complaint must be dismissed. Having so found, the Court declines to consider the propriety of *Colorado River* abstention or any further arguments raised by the parties.

## Conclusion

Accordingly:

IT IS ORDERED that all claims raised against Defendant Texas Department of Insurance Division of Workers' Compensation are DISMISSED;

IT IS FURTHER ORDERED that the Intervenor Defendants' Motion to Dismiss for Lack of Jurisdiction, and in the Alternative, Motion to Stay [#33] is GRANTED; and

IT IS FINALLY ORDERED that the State Defendants' Motion to Dismiss [#34] is GRANTED.

SIGNED this the ___11___ day of August 2016.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE