FILED
18 AUG -2 PM 3: 00
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ AO
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

**AIR EVAC EMS, INC.,**
**Plaintiff,**

-vs-

**Case No.  A-16-CA-060-SS**

**KENT SULLIVAN, in his official capacity as Texas Commissioner of Insurance, and RYAN BRANNAN, in his official capacity as Texas Commissioner of Workers' Compensation,**
**Defendants,**

**and**

**TEXAS MUTUAL INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, ZENITH INSURANCE COMPANY, HARTFORD UNDERWRITERS INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, TRANSPORTATION INSURANCE COMPANY, VALLEY FORGE INSURANCE COMPANY, and TRUCK INSURANCE EXCHANGE,**
**Intervenor Defendants.**

---

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Air Evac EMS, Inc. (Air Evac)'s Second Amended Motion for Summary Judgment [#86], State Defendants'[1] Motion for Summary Judgment and Response [#87], the Intervenor Defendants' Motion for Summary Judgment and Response [#88], Air Evac's Reply [#97], the State Defendants' Reply [#100], and the Intervenor Defendants'[2] Reply [#104] as well as Air

---

[1] Air Evac sued Kent Sullivan, in his official capacity as Texas Commissioner of Insurance, and Ryan Brannan, in his official capacity as Texas Commissioner of Workers' Compensation (collectively, State Defendants).

[2] Numerous workers' compensation insurers—Texas Mutual Insurance Company, Liberty Mutual Insurance Company, Zenith Insurance Company, Hartford Underwriters Insurance Company, Twin City Fire Insurance Company, Transportation Insurance Company, Valley Forge Insurance Company, and Truck Insurance Exchange—intervened in

Evac's Motion to Strike Summary Judgment Evidence [#94], the State Defendant's Response [#101] in opposition, the Intervenor Defendants' Response [#106] in opposition, and Air Evac's Reply [#108] in support.[3] Having considered the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

## Background

### I.     The Parties

Air Evac is a nationwide provider of air ambulance services, supplying air transportation in response to medical emergencies. Air Evac operates more than twenty air bases in Texas and holds a variety of licenses. Relevant here, the Federal Aviation Administration (FAA), a division of the Department of Transportation (DOT), issued Air Evac a Part 135 air carrier operating certificate. Pl.'s Mot. Summ. J. [#86-1] Ex. C (Air Carrier Certificate). In doing so, the FAA expressly certified Air Evac "has met the requirements of the Federal Aviation Act . . . and is hereby authorized to operate as an air carrier and conduct common carriage operations . . . ." *Id.* Additionally, the DOT approved Air Evac's registration as an "air taxi operator," which is "a classification of air carriers . . . directly engage[d] in air transportation of persons or property . . . ." *Id.* [#86-1] Ex. E (Air Taxi Operator Registrations); 14 C.F.R. § 298.3(a).

When Air Evac transports a patient who was injured at work and whose medical expenses are covered by a workers' compensation policy, the Texas Workers' Compensation Act (TWCA), Texas Labor Code §§ 401.001–401.026, governs payment for Air Evac's services.

---

this suit.

[3] Air Evac also filed an unopposed motion for leave to file sealed documents, which the Court GRANTS as a matter of course. *See* Mot. Leave [#95].

In filing this declaratory judgment action against the State Defendants as officials administering the TWCA, Air Evac challenges the TWCA provisions restricting the amount Air Evac can charge and the method through which Air Evac can bill for its services. Air Evac contends application of the TWCA and its related regulations to air ambulance providers is preempted by the Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b)(1).

## II.    The TWCA

The Texas Legislature enacted the TWCA in 1913 "in response to the needs of workers, who, despite escalating industrial accidents, were increasingly being denied recovery." *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 642 (Tex. 2015) (quoting *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000)). Through the TWCA, the Texas Legislature created "a mechanism by which workers could recover from subscribing employers without regard to the workers' own negligence while limiting the employers' exposure to uncertain, possibly high damage awards permitted under the common law." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 349–50 (Tex. 2008) (internal citations omitted). Such a mechanism "ensure[s] compensation for injured employees while protecting employers from the costs of litigation . . . ." *Id.*

Relevant here, the TWCA requires health care providers, such as air ambulance providers, to charge workers' compensation insurers for services provided to patients covered by the TWCA. *See* TEX. LAB. CODE § 408.027(a). The workers' compensation insurer then reimburses the health care provider according to rate guidelines created by the Texas Workers' Compensation Commission (the Commission). *Id.* §§ 408.027(a), 413.011(a).

Generally corresponding with Medicare rates, the Commission's guidelines set the maximum allowable reimbursement a workers' compensation insurer may pay a health care provider for services rendered. 28 TEX. ADMIN. CODE § 134.1(a); *see also* TEX. LAB. CODE § 413.011(a). An insurer is

prohibited from paying more than the maximum allowable rate. *See* TEX. LAB. CODE § 413.011(d). If the Commission has not established a rate for a particular medical service—as is the case for air ambulance services—the Division of Workers' Compensation (DWC) determines a "fair and reasonable" amount to be paid to the service provider. *Id.* In 2002, the DWC adopted a rule setting a general reimbursement rate of 125% of the Medicare rate. *See* 28 TEX. ADMIN. CODE § 134.203(d).

Furthermore, the TWCA prohibits a health care provider from billing the patient for any portion of a bill in excess of the Commission's rate, a practice known as "balance billing." TEX. LAB. CODE § 413.042. If a workers' compensation insurer pays less than a service provider's billed charges, the service provider may file a medical fee dispute with the DWC. *Id.* § 413.031(a)(1). The DWC then examines the TWCA and its regulations to determine whether a service provider is owed further payment and, if so, how much. *Id.*

Air Evac alleges it provided air ambulance services to "several dozen" workers' compensation patients during 2015 but, "because of the TWCA's reimbursement scheme, . . . has been paid only a small fraction of its billed charges." Compl. [#1] ¶ 31.

## II.    Procedural History

Air Evac filed this suit against the State Defendants in January 2016. *See id.* Seeking a declaratory judgment and permanent injunctive relief, Air Evac argues the ADA preempts Texas Labor Code § 314.011 and 28 Texas Administrative Code § 134.1 and § 134.203 as applied to air ambulance providers. *Id.* ¶¶ 36–39. Air Evac claims these TWCA provisions establish the price or rate Air Evac may charge for its transportation services, which is impermissible under the ADA.[4] *Id.*

---

[4] Alternatively, Air Evac claims the ADA also preempts the provision prohibiting balance billing, Texas Labor Code § 413.042(a). Compl. [#1] at ¶¶ 41–45 & n.1. As Air Evac only brings this claim in the alternative and the Court finds the ADA preempts TWCA's reimbursement restrictions, the Court need not examine the prohibition on balance billing.

-4-

Prior to the discovery conference, Air Evac moved for summary judgment and the State Defendants and the Intervenor Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(1). The Court granted the Defendants' motions to dismiss on sovereign immunity grounds. *Air Evac EMS, Inc. v. Texas*, No. A-16-CA-060-SS, 2016 WL 4259552 (W.D. Tex. Aug. 11, 2016). The Fifth Circuit vacated and remanded the case. *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507 (5th Cir. 2017).

Following remand, Air Evac filed an amended motion for summary judgment. The Court dismissed Air Evac's amended summary judgment motion without prejudice to refiling and authorized a limited discovery period to create a full record of the parties' factual contentions. Order of June 1, 2017 [#66]; Order of June 30, 2017 [#70].[5] After discovery, Air Evac, the State Defendants, and the Intervenor Defendants filed cross motions for summary judgment. Air Evac also filed a motion to strike evidence submitted by the State Defendants and the Intervenor Defendants in support of their motions for summary judgment. These pending motions are ripe for review.

## Analysis

### I. Motion to Strike

Air Evac moves to strike the opinions of Dr. Ronald T. Luke and Mr. Daniel Akins, offered as experts by Defendants in support of their motions for summary judgment and in opposition to Air Evac's motion for summary judgment. Air Evac argues Dr. Luke and Mr. Akins offer inadmissible expert testimony and their opinions are unreliable. Air Evac also moves to strike portions of the

---

[5] While the parties conducted discovery in this case, Texas's Third Court of Appeals ruled on the appeal of the lead administrative proceeding concerning air ambulance fee disputes. *See PHI Air Med., LLC v. Texas Mut. Ins. Co.*, 03-17-00081-CV, 2018 WL 700915, at *7 (Tex. App.—Austin Jan. 31, 2018, pet. filed). Texas's administrative dispute system permits appeal of the DWC's decisions to the State Office of Administrative Hearings (SOAH), and SOAH's decisions are appealable to Travis County district court and upward. *See* TEX. LAB. CODE § 413.031(k-1). Relevant here, Texas's Third Court of Appeals concluded the ADA preempts application of TWCA's rate guidelines and restrictions to air ambulance providers. Review of the Texas appellate court's decision is pending in the Texas Supreme Court.

declarations of Mr. Steven Math and Ms. Phoebe Murphy—two Texas Mutual Insurance Company employees—because their statements exceed the bounds of permissible lay opinion and stray into expert testimony.

The Court dismisses Air Evac's motion to strike. There is no jury demand in this case, and thus the Court is the trier of fact. Air Evac's objections to Defendants' evidence ask the Court to exercise its role as a "gatekeeper" and apply the admissibility standards articulated in Federal Rules of Evidence 701 and 702 as well as those expressed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and extended by *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). But the gatekeeper role is intended to prevent the introduction of confusing and unreliable testimony to the jury. *See Daubert*, 509 U.S. at 595–97. Safeguards such as those provided for in Rules 701 and 702 and discussed in *Daubert* are largely irrelevant in the context of a bench trial. *See Williams v. Illinois*, 567 U.S. 50, 69 (2012) ("When the judge sits as the trier of fact, it is presumed that the judge will understand the limited reason for the disclosure of the underlying inadmissible information and will not rely on that information for any improper purpose."); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) (finding the standards announced in *Daubert* "are not as essential in a case . . . where a district judge sits as the trier of fact in place of a jury).

Because the Court will not rely on any evidence for an improper purpose, the danger against which Air Evac seeks to guard—namely, the consideration of inadmissible expert and lay testimony—is not present here. The Court therefore dismisses Air Evac's motion to strike.

## II.     Motions for Summary Judgment

### A     Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and

that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party makes an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## B. Application

The parties' summary judgment briefing presents two overarching questions: (1) Does the ADA preempt application of the TWCA—specifically Texas Labor Code § 314.011 and 28 Texas Administrative Code § 134.1 and § 134.203—to air ambulance providers such as Air Evac? (2) Does the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, shield those TWCA provisions from federal preemption? The Court reviews both of these questions in turn.[6]

### I. ADA Preemption

Congress enacted the ADA in 1978 to promote "efficiency, innovation, and low prices" in the air transportation industry through "maximum reliance on competitive market forces and on actual and potential competition." 49 U.S.C. §§ 40101(a)(6), 12(A); *Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1428 (2014). Through the ADA, Congress eliminated federal regulation of air carrier prices. *See Am.*

---

[6] Air Evac argues collateral estoppel should bar the Defendants from relitigating the issues of ADA preemption and McCarran–Ferguson Act application because both issues were litigated in *PHI. See PHI Air Med.*, 2018 WL 700915. The Court has broad discretion to apply collateral estoppel, and it declines to exercise that discretion here. *See Baros v. Tex. Mexican Ry. Co.*, 400 F.3d 228, 232 (5th Cir. 2005) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)). To apply collateral estoppel would be unfair to the State Defendants. Air Evac could have joined the other air ambulance providers in challenging TWCA's application in state court. *See Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990) ("An intervenor is not required to secure the court's permission to intervene; the party who opposed the intervention has the burden to challenge it by a motion to strike."). Moreover, Air Evac's collateral estoppel argument contradicts its earlier argument against federal abstention where it urged this Court to exercise jurisdiction over this case despite the pending administrative proceeding. *See* Air Evac's Omnibus Resp. [#44] at 15–17.

*Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995). "To ensure that the States would not undo federal deregulation with regulation of their own," Congress included a preemption provision as part of the ADA. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). Under the preemption provision, a State "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1).

Air Evac argues the ADA preempts application of the TWCA compensation scheme to air ambulance providers such as Air Evac. According to Air Evac, the plain text of the ADA's preemption provision applies where (1) the entity affected by the challenged state-law provision is an "air carrier," (2) the state-law provision has the "force and effect of law," and (3) the provision "relate[s] to a price, route, or service of" the air carrier. Pl.'s Mot. Summ. J. [#86] at 11 (quoting 19 U.S.C. § 41713(b)(1)). Air Evac argues these three conditions are met. Thus, under Air Evac's analysis, the ADA's plain language preempts TWCA's reimbursement restrictions.

By contrast, Defendants argue Congress did not intend to preempt state workers' compensation laws. Defendants contend the Court must apply a presumption against preemption because state workers' compensation laws are enacted through a state's police power. Thus, according to Defendants, the Court must find preemption of the TWCA to be "the clear and manifest purpose of Congress," a standard Defendants claim ADA's preemption provision does not meet. State Defs.' Mot. Summ. J. [#87] at 6–22; Intervenors' Mot. Summ. J. [#88] at 25–34. Defendants contend Air Evac's reading of the ADA's preemption provision is uncritically literal and ignores Congress's intent as expressed by the statute's purpose and structure.

The Court agrees with Air Evac: the ADA preempts TWCA's restriction of Air Evac's rates. In so finding, this Court joins the ranks of courts recognizing that state regulation of air ambulance

prices is preempted by the ADA. *See Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1272 (11th Cir. 2018); *EagleMed LLC v. Cox*, 868 F.3d 893, 907 (10th Cir. 2017); *Air Evac EMS, Inc. v. Cheatham*, No. 2:16-CV-05224, 2017 WL 4765966, at *10 (S.D.W. Va. Oct. 20, 2017), *appeal docketed*, No. 17-2349 (4th Cir. Nov. 22, 2017); *Valley Med Flight, Inc. v. Dwelle*, 171 F. Supp. 3d 930, 947 (D.N.D. 2016). A full analysis follows.

### a. Preemption Standard

"The [preemption] question, at bottom, is one of statutory intent," and the Court "begin[s] with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Morales*, 504 U.S. at 383. In interpreting the ADA's text, the Court is guided by three prior United States Supreme Court decisions assessing the ADA's preemptive reach.[7] *See Northwest, Inc.*, 134 S. Ct. at 1428 ("We have had [prior] two occasions to consider the ADA's pre-emptive reach." (reviewing the Court's holdings in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) and *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995))).

Defendants argue the Court's interpretation of the ADA should apply a presumption against preemption. Defendants correctly note "[t]he Supreme Court has repeatedly cautioned that federal courts should not displace state police powers by federal law unless that was the 'clear and manifest purpose of Congress.'" *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 338 (5th Cir. 1995) (quoting *California v. ARC America Corp.*, 490 U.S. 93, 102 (1989)). And state laws regulating workers' compensation "obviously are subject to the State's police power." *Alessi v. Raybestos-Manhattan, Inc.*,

---

[7] As enacted in 1978, the ADA preempted state laws "relating to rates, routes, or services of any air carrier . . . ." Pub.L. No. 95–504, § 4(a), 92 Stat. 1705, 1707–08 (1978) (codified at 49 U.S.C. § 1305(a)(1) (1982)). In 1994, Congress recodified Title 49 and the preemption language was rephrased to preclude all state laws "related to a price, route, or service . . . ." Pub. L. No. 103–272, § 1(e), 108 Stat. 745, 1143. The Conference Report accompanying the new statute noted "we are intending no substantive change" and the revisions were "not intend[ed] to impair the applicability of prior judicial case law interpreting these provisions." H.R. Rep. No. 103–240, at 83 (1994), reprinted in 1994 U.S.C.C.A.N. 1676, 1755.

451 U.S. 504, 524 (1981). Defendants therefore assert this Court can only find federal preemption if the Court finds preemption of the TWCA to be the clear and manifest purpose of Congress.

However, the Supreme Court's cases on the ADA read its preemption language expansively and have consistently found ADA preemption in areas governed by the State's police power. *See Northwest, Inc.*, 134 S. Ct. at 1431–33 (concluding a claim for breach of implied covenant of good faith and fair dealing is preempted even where the state-imposed obligation ensures a party "does not violate community standards of decency, fairness, or reasonableness" (quotation omitted)); *Wolens*, 513 U.S. at 227–28 (finding state law protecting consumers from fraud to be preempted); *Morales*, 504 U.S. at 391 (holding state regulation of airline fare advertising preempted); *see also Gonzales v. Raich*, 545 U.S. 1, 42 (2005) ("The States' core police powers have always included authority to . . . protect the health, safety, and welfare of their citizens.").

And when the Supreme Court analyzed the ADA's preemption provision, it neither applied nor addressed a presumption against preemption even though the issue was raised by the parties and discussed in dissent. *See Wolens*, 513 U.S. at 237 (Stevens, J., concurring in part and dissenting in part) (considering ADA's preemption provision in light of a presumption against preemption); *Morales*, 504 U.S. at 421 (1992) (Stevens, J., dissenting) (discussing the application of a presumption against preemption); Br. of Resp'ts, *Wolens*, 513 U.S. 219 (No. 93-1286), 1994 WL 381834, at *31–32 (arguing a strong presumption against preemption should apply to claims traditionally governed by state law); Br. of Thirty-One State Att'ys Gen. Resp'ts in Supp. of Pet'r, *Morales*, 504 U.S. 374 (No. 90-1604), 1992 WL 525832, at *8–9 ("In addition, the airlines here must overcome the strong presumption against finding preemption of state law in an area -- such as consumer protection against deceptive advertising -- traditionally regulated by the states.").

Thus, this Court declines to apply a presumption against preemption here. *See DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 86 (1st Cir. 2011) (also refusing to employ a presumption against preemption).

### b. The ADA, the TWCA, and Air Evac

To establish preemption under the ADA, the party claiming preemption applies must establish "a State, political subdivision of a State, or political authority of at least two States . . . enact[ed] or [is] enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under [Subpart II]." *See* 49 U.S.C. § 41713(b)(1); *see also Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011) ("The party asserting federal preemption has the burden of persuasion.").

Defendants do not dispute the relevant TWCA provisions were enacted by the State of Texas and have the force and effect of law. Therefore, the Court need only determine whether Air Evac is an air carrier as the term is used in 49 U.S.C. § 41713(b)(1) and, if so, whether the relevant TWCA provisions "relate[] to a price, route, or service" of Air Evac. The Court finds both of these requirements satisfied.

### 1. Air Carrier

In general, the ADA defines "air carrier" as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(2)(a)(2). "Air transportation" means "any foreign air transportation, interstate air transportation, or the transportation of mail by aircraft." § 40102(a)(5). The FAA expressly certified Air Evac as an air carrier because it "met the requirements of the Federal Aviation Act" and is "authorized to operate as an air carrier and conduct common carriage operations . . . ." Air Carrier Certificate. Moreover, the DOT authorized Air Evac to "directly engage in air transportation of persons or property" in approving its registration as

an air taxi operator. Air Taxi Operator Registrations; 14 C.F.R. § 298.3(a). Thus, Air Evac is an air carrier as defined in the ADA because it is authorized to directly provide air transportation.

However, Defendants argue Air Evac is not an air carrier as the term is used in § 41713(b)(1) because it is not "an air carrier that may provide air transportation under [Subpart II]." Defendants claim § 41713(b)(1) only applies to air carriers holding a specific certificate issued under Subpart II of the statute, a certificate of public convenience and necessity furnished under Chapter 411.

Defendants' argument is unpersuasive. Although a provision within Subpart II states an air carrier "may provide air transportation only if the air carrier holds a certificate under [Chapter 411,]" holding a such a certificate is not the defining trait of an air carrier under Subpart II. *See* 49 U.S.C. § 41101(a). The Secretary of Transportation may exempt an air carrier "from a provision of chapter 411"—such as holding a certificate—if "the exemption is consistent with the public interest." *Id.* § 40109(c).

In the context of air ambulances, the Secretary of Transportation has done exactly that. Through 14 C.F.R. Part 298, the Secretary of Transportation "establish[ed] classifications of air carriers known as 'air taxi operators' and 'commuter air carriers,'" which are exempted "from some of the economic regulatory provisions of Subtitle VII of Title 49 of the United States Code . . . ." 14 C.F.R. § 298.1. Air ambulance providers, as air taxi operators, "directly engage in the air transportation of persons" but "[d]o not hold a certificate of public convenience and necessity and do not engage in scheduled passenger operations." 14 C.F.R. § 298.3(a).

Thus, an air taxi may nevertheless provide air transportation under Subpart II without holding a certificate under Chapter 411. *See Hughes Air Corp. v. Pub. Utilities Comm'n of State of Cal.*, 644 F.2d 1334, 1338 (9th Cir. 1981) (holding air carriers exempt from certification are within the scope of the ADA); *Schneberger v. Air Evac EMS, Inc.*, No. CIV-16-843-R, 2017 WL 1026012, at *2 (W.D.

Okla. Mar. 15, 2017) (finding Air Evac qualifies as an air carrier under the ADA and noting that "[c]ourts have all but uniformly held that air ambulance providers are 'air carriers' under the ADA." (citations omitted)).

In sum, Air Evac is an air carrier under Subpart II because it possesses both a Part 135 air carrier operating certificate and DOT authorization to operate as an air taxi under 14 C.F.R. Part 298. *See* Air Carrier Certificate; Air Taxi Operator Registrations. Air Evac is therefore an air carrier for purposes of the ADA's preemption provision.

### 2. Related to a Price, Route, or Service

A law "relate[s] to a price route or service" if it has "a connection with, or reference to" an air carrier's prices, routes, or services. *See Northwest, Inc.*, 134 S. Ct. at 1430–31 (citing *Morales*, 504 U.S. at 384). Because the phrase "related to" expresses a "broad pre-emptive purpose," "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted under [the ADA]." *Morales*, 504 U.S. at 384. Thus, where a state law has "the forbidden significant effect" on the prices of an air carrier, the ADA preempts that law. *See id.* at 388; *see also Bailey*, 889 F.3d at 1262.

TWCA's reimbursement system has a connection with or reference to Air Evac's prices. The TWCA authorizes the Commission to set the "fair and reasonable" amount to be paid to air ambulance providers like Air Evac. *See* TEX. LAB. CODE § 413.011; 28 TEX. ADMIN. CODE §§ 134.1, 134.203. In doing so, the TWCA restricts how much Air Evac can receive for the air ambulance services it provides to injured workers. Such a restriction has a forbidden significant effect on Air Evac's prices.

Defendants argue the air ambulance pricing model does not fit the competitive market model Congress intended to promote in deregulating the airline industry. Because air ambulance services are

not priced by a competitive market where consumers price shop and make voluntary purchases, Defendants urge the Court to find Air Evac's "prices" are not the type deregulated by the ADA and therefore are not shielded from state regulation. However, Defendants' argument belies the word choice of the ADA's preemption provision.

The ADA itself defines "price" to mean "a rate, fare, or charge." 49 U.S.C. § 40102(a). In enacting the ADA, Congress prohibited state interference with air carrier "rates." Later, in recodifying Title 49, Congress replaced "rates" with "price" but "intend[ed] no substantive change." *See* H.R. Rep. No. 103–240, at 83. When Congress enacted the ADA, the definition of "rate" included "a charge, valuation, payment, or price fixed according to ratio, scale or standard; comparative price or amount of demands." *See* Black's Law Dictionary 1134 (5th ed. 1979).[8] Similarly, the definition of "price" included "[s]omething which one ordinarily accepts voluntarily in exchange for something else." *Id.* at 1070. The amount Air Evac charges for its air ambulance services falls within these definitions of "rate" and "price." Contrary to Defendants' argument, "rate" and "price" are not restricted to the bargained-for amount a consumer is willing to pay. These terms include the amount a seller charges, regardless of whether or not a seller faces inelastic demand.

Because the TWCA effectively determines what Air Evac can charge by restricting the amount it can receive for its services, the relevant TWCA provisions relate to Air Evac's prices.

### 3. Congressional Intent & Policy Implications

Arguing Congress did not intend to preempt workers' compensation payments to air ambulances, Defendants contend the Court should reject an "uncritically literal" reading of the ADA's

---

[8] In evaluating the meaning of "relating to" in the context of the ADA's preemption provision, the Supreme Court looked to "[t]he ordinary meaning of these words" as articulated in the version of Black's Law Dictionary published in 1979. *See Morales*, 504 U.S. at 383.

preemption provision. Intervenors' Mot. Summ. J. [#88] at 26–27 (citing *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655–56 (1995)). According to Defendants, Congress only intended to deregulate commercial air transportation and shipping, not emergency air transportation, and did not contemplate workers' compensation insurance payments to air ambulances. Defendants argue a finding of preemption would leave injured workers and workers' compensation insurers obligated to pay the billed charges of air ambulance providers without means for redress. State Defs.' Mot. Summ. J. [#87] at 24–25.

In essence, Defendants urge this Court to carve out an exception to the ADA's preemption provision. But courts "are not at liberty to create an exception where Congress has declined to do so." *Freytag v. C.I.R.*, 501 U.S. 868, 874 (1991) (quoting *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 27 (1989)). The responsibility of this Court "is to construe and enforce the Constitution and the laws of the land as they are" and not to legislate policy on the basis of its own inclinations. *See Evans v. Abney*, 396 U.S. 435, 447 (1970).

The ADA's legislative history suggests Congress sought to comprehensively preempt state regulation of interstate transportation. S. Rep. No. 95-631, at 98 (1978) ("Clearly, a Federal grant of authority, whether a certificate or exemption, to engage in interstate transportation issued by the Federal Government should give the Federal Government the sole responsibility for regulating that air carrier."); 124 Cong. Rec. 37,419 (1978) ("The [ADA] establishes a new section of the Federal Aviation Act under which Federal law would preempt State regulation as soon an intrastate airline received any interstate authority, no matter how limited those interstate activities might be."); 124 Cong. Rec. 10,671 (1978) (clarifying that the preemption language in the Senate version of the ADA preempts State regulation of part 298 carriers); 124 Cong. Rec. 16,723 (1978) (recording the advice of the Chief Counsel of the House Committee on Public Works and Transportation that the House

version of the ADA would prevent states from regulating the routes or rates of commuter air carriers, which like air taxi operators, are exempt from holding a Chapter 411 certificate).

Defendants point to a single discussion concerning air ambulances in the ADA's legislative history as evidence Congress intended air ambulances fall outside the ADA's score. That discussion centered on a proposed amendment to subsidize vulnerable air ambulance providers where burdensome federal regulations threatened operations. *See* 124 Cong. Rec. 5,875–76. The proposed amendment was eventually withdrawn as no evidence had been gathered on the issue of subsidizing air ambulance providers and senators agreed future legislation would be a better vehicle. *Id.* Contrary to Defendants' argument, the discussion regarding air ambulances indicates Congress, at the very least, knew of the air ambulance industry when it considered the ADA and declined to fashion an exemption from the federal preemption provision.[9] This Court cannot now create such an exemption.

The Court therefore concludes the ADA preempts application of TWCA's compensation scheme to air ambulance providers such as Air Evac.

### ii.    McCarran-Ferguson Act

Having found the application of TWCA's reimbursement restrictions to Air Evac fall within the scope of the ADA's preemption provision, the Court now turns to whether the McCarran–Ferguson Act protects the relevant TWCA provisions from preemption. For the reasons articulated below, the Court finds the McCarran-Ferguson Act does not bar preemption.

---

[9] Defendants emphasize how, during the course of the discussion of the proposed amendment, the ADA's sponsor commented "the FAA and not the [Civil Aeronautics Board (CAB)] has the jurisdiction over the air ambulances, and it makes no sense to me to change that responsibility now." *See* 124 Cong. Rec. 5,876. However, Defendants highlight no reason why the ADA's preemption provision should be coextensive with the CAB's 1978 authority. Furthermore, the proposed amendment appears to have been limited to "any air commuter or air taxi operation certified or regulated by a State agency." *See* 124 Cong. Rec. 5,875.

"The starting point in a case involving construction of the McCarran–Ferguson Act, like the starting point in any case involving the meaning of a statute, is the language of the statute itself." *U.S. Dep't of Treasury v. Fabe,* 508 U.S. 491, 500 (1993) (alteration omitted) (quoting *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210 (1979)). In its entirety, the relevant McCarran–Ferguson Act provision states:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided*, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended [15 U.S.C.A. 41 et seq.], shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

15 U.S.C. § 1012(b).

Section 1012(b) contains two distinct clauses. *See Fabe*, 508 U.S. at 501–04. The first clause shields laws "enacted by any State for the purpose of regulating the business of insurance" from federal preemption unless the applicable federal statute "specifically relates to the business of insurance . . . ." *See* 15 U.S.C. § 1012(b). The second clause, beginning after "*Provided*," governs the application of certain federal antitrust laws "to the business of insurance" where "such business is not regulated by State law." *Id.* As this case does not concern antitrust matters, only the first clause is at issue here.

The McCarran–Ferguson Act's first clause shields a state law from federal preemption where the state law was "enacted for the purpose of regulating the business of insurance, if the federal measure does not specifically relate to the business or insurance, and would invalidate, impair, or supersede the State's law." *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) (alteration and internal quotation marks omitted); *see also Munich Am. Reinsurance Co. v. Crawford*, 141 F.3d 585, 590 (5th Cir. 1998).

Here, it is undisputed that the federal measure, the ADA, does not specifically relate to the business of insurance. *See* Pl.'s Mot. Summ. J. [#86] at 15–19 (arguing only the TWCA provisions were not enacted for the purpose of regulating the "business of insurance"); State Defs.' Mot. Summ. J. [#87] at 26; Intervenors' Mot. Summ. J. [#88] at 15. And, as described above, the Court finds the ADA would invalidate TWCA's reimbursement restrictions as applied to Air Evac. Thus, all that remains for the Court to determine is whether the TWCA is a law enacted "for the purpose of regulating the business of insurance." *See* 15 U.S.C. § 1012(b).

To qualify as a law enacted for the purpose of regulating the business of insurance, a statute need not directly regulate the business of insurance by "prescribing the terms of the insurance contract or by setting the rate charged by the insurance company." *Fabe*, 508 U.S. at 502–03. "Statutes aimed at protecting or regulating this relationship [between insurer and insured], directly or indirectly, are laws regulating the 'business or insurance' within the meaning of the phrase." *Id.* at 501 (alternation in original) (some internal quotation marks omitted) (quoting *SEC v. Nat'l Secs. Inc.*, 393 U.S. 453, 460 (1969)). The "broad category" of state laws enacted for the purpose of regulating the business of insurance "consists of laws that possess the end, intention, or aim of adjusting, managing, or controlling the business of insurance." *Id.* at 505. The "core of the 'business of insurance'" is "[t]he relationship between the insurer and insured, the type of policy that could be issued, its reliability, interpretation, and enforcement . . . ." *Fabe*, 508 U.S. at 502–03 (quoting *Nat'l Secs. Inc.*, 393 U.S. at 460).

To determine whether a regulated practice is part of the business of insurance, three nondispositive criteria guide the Court's inquiry: whether "(1) the practice has the effect of transferring or spreading a policyholder's risk; (2) the practice is an integral part of the policy relationship between the insurer and the insured; and (3) the practice is limited to entities within the insurance industry."

*Munich*, 141 F.3d at 591 (citing *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982)). These three criteria are known as the *Pireno* factors. *Id.* at 592.

Because the Supreme Court interprets the first clause of § 1012(b) more expansively than the second clause, *see Fabe*, 508 U.S. at 504–05, Defendants argue this Court should not conflate cases analyzing § 1210(b)'s second clause with those analyzing the first. But both the Supreme Court and the Fifth Circuit considered the *Pireno* factors and looked to second-clause cases when applying the first clause of § 1210(b). *See id.* at 502–04, 508–09; *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493–94 (5th Cir. 2006); *Munich*, 141 F.3d at 591–94. So, too, does this Court.

To that end, the Court concludes the *Pireno* factors favor finding TWCA's restriction of air ambulance providers' rates does not regulate the business of insurance. *See Fabe*, 508 U.S. at 509 n. 8 ("[A] state statute . . . need not be treated as a package which stands or fall in its entirety). The practice at issue is how much an air ambulance provider can bill for its services. Rather than transferring or spreading risk, this practice concerns the size and recovery of third-party costs. Constraining third-party costs "may well inure to the benefit of policyholders" but is not the business of insurance. *See Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 214 (1979) (footnote omitted) (finding an insurer's efforts to contractually limit the amount it pays pharmacies for drugs to fall outside the business of insurance). A third-party health care provider's rate is not an integral part of the policy relationship between the insurer and the insured. *See id.* at 215–16 (concluding separate agreements between insurer and pharmacies for sale and distribution of goods and services other than insurance did not concern the relationship between insurer and insured). And, likewise, a health care provider's rate is not a practice limited to entities within the insurance industry. *See id.* at 231 (deciding arrangements with third parties to reduce insurer costs were not limited to

entities within the insurance industry). Thus, the Court finds the regulated practice does not constitute the business of insurance within the meaning of §1012(b).

To be fair to Defendants, there is evidence supporting the argument that the Texas Legislature enacted the TWCA as a whole to regulate the business of insurance. In instituting the TWCA, the Texas Legislature attempted to design a workers' compensation system by balancing the interests of the two types of insureds—employees subject to the risk of injury and employers—and insurance companies. *In re Poly-Am.*, 262 S.W.3d at 352; *see also Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 212 (Tex. 1988) (stating the TWCA addresses a three-party insurance agreement entered into by the employer, employee, and insurance carrier), *overruled on other grounds by Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430 (Tex. 2012). But, to the extent the TWCA restricts the relationship between insurers and third-party service providers, the TWCA regulates the "business of insurance companies" rather than the "business of insurance." *See Pireno*, 458 U.S. at 132 ("To grant the [cost-savings] practices a § [1012](b) exemption on such a showing would be plainly contrary to the statutory language, which exempts the 'business of insurance' and not the 'business of insurance companies.'" (internal quotation marks and citation omitted)).

This conclusion echoes comments made by the United States Court of Appeals for the Tenth Circuit when it evaluated Wyoming's workers' compensation system and its affect on air ambulance providers. *See EagleMed*, 868 F.3d at 904–05. The Tenth Circuit insinuated that even if a state-run workers' compensation system creates an insurance program, provisions restraining medical providers' costs concern the business of insurance companies rather than the business of insurance. *Id.* ("[T]he state statute must be specifically directed toward 'the "business of insurance,"' not just 'the business

of insurance companies,' which means it must involve something more than an insurance company's agreement with medical providers or pharmacies to fix prices.").

In an attempt to evade the "business of insurance companies" classification, Defendants argue the TWCA defines the benefits of workers' compensation insurance, which include payment of air ambulance providers, and thus the TWCA falls within the scope of the McCarran-Ferguson Act's first clause. *See Fabe*, 508 U.S. at 502–03 (noting prescribing the terms of the insurance contract directly regulates the business of insurance). Defendants' argument follows a logical arc: The TWCA prescribes the terms of workers' compensation insurance policies. *See* TEX. INS. CODE § 2052.002. These policies must pay the benefits required by law.[10] The payment of air ambulance providers is a benefit of the insurance policy. Thus, in setting the amount Air Evac is paid, the TWCA prescribes a term of the insurance contract.

But Defendants' argument is flawed. It incorrectly assumes a service provider's reimbursement rate is an insurance policy benefit. Rather, the policy benefit conferred is the movement of the obligation to pay an air ambulance provider from the insureds to the insurer, i.e. a risk shifted. That the TWCA also restricts a service provider's reimbursement rate does not make it part of the insurance policy. Instead, the restriction is merely an effort to constrain insurers' costs.

Accordingly, the Court holds the TWCA provisions restricting air ambulance reimbursement were not enacted for the purpose of regulating the business of insurance and thus the McCarran–Ferguson Act does not shield those TWCA provisions from ADA preemption.

---

[10] *See* Texas Dep't of Ins., Texas Worker' Compensation and Employers' Liability Manual, Standard Policy, Part One, Sec. B, 99 ( 2011), http://www.tdi.texas.gov/wc/regulation/documents/Endform.pdf.

## Conclusion

To summarize, the Court finds the ADA preempts the challenged provisions of the TWCA. Air Evac is therefore entitled to a judgment as matter of law that the ADA preempts Texas Labor Code § 413.011 and 28 Texas Administrative Code § 134.1 and § 134.203 as applied to Air Evac. Because the Court finds the ADA preempts the relevant Texas law provisions, Air Evac is entitled to a permanent injunction prohibiting the State Defendants from enforcing those provisions against it. *See VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006) ("In an express preemption case, . . .the finding with respect to likelihood of success carries with it a determination that the other three requirements [for a permanent injunction] have been satisfied.").

Accordingly,

IT IS THEREFORE ORDERED that Plaintiff Air Evac EMS, Inc.'s Motion for Leave to File Sealed Document [#95] is GRANTED;

IT IS FURTHER ORDERED that Plaintiff Air Evac EMS, Inc.'s Motion Strike Summary Judgment Evidence [#94] is DISMISSED;

IT IS FURTHER ORDERED that Plaintiff Air Evac EMS, Inc.'s Second Amended Motion for Summary Judgment [#86] is GRANTED;

IT IS FURTHER ORDERED that the State Defendants' Motion for Summary Judgment [#87] is DENIED;

IT IS FINALLY ORDERED that the Intervenor Defendants' Motion for Summary Judgment [#88] is DENIED.

SIGNED this the 2nd day of August 2018.

_____
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE

-23-